IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Freddy Ludwig Wambach, | ) | C/A No.: 1:10-1022-HFF-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| S. Blackwell, R.N., and T. Murray, in | ) | |
| their individual and official capacities, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff, proceeding *pro se*, brought this action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights while he was a pretrial detainee at Spartanburg County Detention Facility ("SCDF"). Before the court is Defendants' Motion for Summary Judgment [Entry #31]. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of Local Civil Rule 73.02(B)(2)(d) (D.S.C.). Because the motion for summary judgment is dispositive, this Report and Recommendation is entered for review by the district judge.

I.     Factual and Procedural Background

Plaintiff filed his complaint in this action on April 27, 2010, and Defendants filed their motion for summary judgment on November 12, 2010. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Defendants' motion. [Entry #32]. Plaintiff filed a responses in opposition to Defendants' motion [Entry #34], and Defendants filed a reply [Entry #35]. On June 28,

2011, the undersigned issued an order requesting Defendants submit additional briefing on whether Plaintiff had received the medication at issue from July to September 2009. Defendants filed a response on July 7, 2011. Having carefully considered the parties' submissions and the record in this case, the court recommends Defendants' motion for summary judgment be granted in part and denied in part.

In his complaint, Plaintiff alleges that in response to his behavior at SCDF, he was taken to Spartanburg Mental Health ("SMH") on June 30, 2009, where Dr. Dunlap prescribed him Seroquel, among other medications for his schizophrenia. [Entry #1 at 3]. Plaintiff alleges that on his next visit to SMH on September 22, 2009, Dr. Dunlap asked him why he was not taking the Seroquel he had prescribed. *Id.* According to Plaintiff, he informed Dr. Dunlap that he was unaware the medication had been prescribed. *Id.* Plaintiff alleges that Dr. Dunlap reordered the Seroquel.

Plaintiff claims that when he returned to SCDF, he requested the Seroquel and was informed that no Seroquel was ordered for him. Plaintiff states that he "became very angry and though[t] everyone was out to get him." [Entry #1 at 4]. He began "smearing feces all over the walls of [his] cell" and "urinated on the floor to keep evil spirits from him." *Id*. Plaintiff claims he was moved to lockdown, where he repeated smearing feces on the wall, urinating on the floor, and protesting about the denial of his medication. *Id*. According to Plaintiff, Defendant Murray instructed Plaintiff to clean up his cell, and sprayed him with mace when he refused. *Id.* Plaintiff claims that several days later, his Seroquel was ordered and Plaintiff "regain[ed] his self control." *Id.*   Plaintiff sues

2

Defendant Blackwell for deliberate indifference to his serious medical needs, claiming that she denied him Seroquel. Additionally, Plaintiff sues Defendant Murray for an alleged unconstitutional use of excessive force, based on Murray's use of mace.

Defendants initially argued that "[c]ontrary to Plaintiff's contentions, his prescription for Seroquel was never discontinued." [Entry #31-1 at 4]. However, upon the court's request for clarification [Entry #40], Defendants submitted briefing conceding that Plaintiff's Seroquel prescription was discontinued on July 5, 2009 and was resumed on September 27, 2009 [Entry #45 at 2]. According to Defendants, Dr. Salvatore Bianco initially wrote Plaintiff a prescription for Seroquel, after a mental health nurse examined Plaintiff on June 2, 2009 and recommended it. *Id.* at 1. Defendants allege that Defendant Blackwell did not fill the prescription from Dr. Dunlap on June 30, 2009, because Plaintiff was still receiving the Seroquel prescribed by Dr. Bianco. *Id.* at 1–2. Defendants further claim that "on July 5, 2009, upon the completion of his first thirty days of Seroquel, SCDF nurse Joyce Allen, [who is not a party to this action] inadvertently and mistakenly discontinued Plaintiff's Seroquel in his chart." *Id.* at 2. Defendants claim Plaintiff began receiving Seroquel again on September 27, 2011.

II.     Discussion

    A.     Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of

3

demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; " or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.  Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

4

B.   Analysis

1.   Pretrial Detainees' Constitutional Rights

Plaintiff's claims are analyzed through the lens of the Due Process clause of the Fourteenth Amendment. "[A] pretrial detainee, not yet found guilty of any crime, may not be subjected to punishment of any description." *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992). "However, not every hardship encountered during pretrial detention amounts to 'punishment' in the constitutional sense." *Hill v. Nicodemus,* 979 F.2d at 991. "And the fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into 'punishment.'" *Bell v. Wolfish*, 441 U.S. 520, 537 (1979). "A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id.* at 538. In doing so, the *Bell* court noted, "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Id.* at 546.

However, "pretrial detainees are entitled to at least the same protection under the Fourteenth Amendment as are convicted prisoners under the Eighth Amendment." *Young v. City of Mount Ranier*, 238 F.3d 567, 575 (4th Cir. 2001) (citing *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 243–44 (1983) and *Hill v. Nicodemus*, 979 F.2d at 991–92). Therefore, the standards applied in Eighth Amendment conditions of

confinement cases are essentially the same as those in cases arising under the Fourteenth Amendment for pretrial detainees. *See Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992); *Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir. 1988) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)).

Although prisoners retain many constitutional rights, it has been recognized that incarceration inherently limits certain constitutional rights of prisoners. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). The United States Supreme Court has held that prison officials have a duty under the Eighth Amendment and county detention centers have a duty under the Fourteenth Amendment to provide humane conditions of confinement: they must ensure adequate food, clothing, shelter and medical care, and must take reasonable measures to guarantee the safety of inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

    2.  Deliberate Indifference

In the case of *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," *Id.* (quoting *Gregg v. Georgia*, 428 U.S. 153, 169–73 (1976)). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or

6

> intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

*Estelle*, 429 U.S. at 103–105 (citations and footnotes omitted).  Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 107.

The Fourth Circuit has also considered this issue in the case of *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." *Id.* at 851 (citations omitted).

In *Farmer v. Brennan*, the Supreme Court clarified that an officer must have "acted or failed to act despite his knowledge of a substantial risk of serious harm." 511 U.S. 825, 842 (1994). Additionally, the *Farmer* court noted that "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence" and

that "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.*

Here, by Defendants' own admission, two mental health professionals believed that Seroquel was necessary or appropriate for Plaintiff such that they recommended and wrote Seroquel prescriptions for him. It is also undisputed that Plaintiff's prescription for Seroquel was discontinued on July 5, 2011. Plaintiff also alleges "he both complained about his mental disorders and manifested physical indication[s]." [Entry #36-1 at 11]. Additionally, while Defendants assert that a non-party nurse inadvertently discontinued Plaintiff's Seroquel, Plaintiff repeatedly alleges that Defendant Blackwell intentionally denied him his medication [Entry #1 at 4–5]. Issues of fact remain in this case, such as whether Defendant Blackwell knew of the discontinuation, whether such discontinuation posed a substantial risk of serious medical harm, and if so, whether Defendant Blackwell was aware of such a risk.

Additionally, genuine issues of material fact exist as to Plaintiff's damages, if any. Defendants contend Plaintiff has failed to show how the lapse in Seroquel caused him any injury in light of his continually receiving other anti-psychotic medications. Plaintiff has set forth allegations that he was unable to eat or sleep, believed "everyone was after him to kill him," and that he suffered "loss of self-control, embarrassment, and mental anguish." [Entry #36-2 at 5]. Plaintiff also argues that "his bizarre behavior[] was so out of place [that] he smeared feces and urinated on the walls and the floor of the cell he was

housed in." [Entry #36-1 at 13–14].[1] Therefore, from the record presented, and viewing the facts in the light most favorable to Plaintiff, the undersigned is constrained to recommend summary judgment be denied as to Plaintiff's allegations regarding medical indifference, as there exist genuine issues of material fact that cannot be resolved without an improper credibility determination at this stage of the proceedings.

      3.      Excessive Force

Plaintiff also alleges that Defendant Murray's use of mace constituted excessive force in violation of his constitutional rights. Compl. at 5. In an excessive force case, a claimant must meet a heavy burden to satisfy the subjective component of the claim; specifically, he must prove that correctional officers applied force "maliciously and sadistically for the very purpose of causing harm" rather than in a good-faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986); *see also Wilkins v. Gaddy*, --- U.S. ----, 130 S.Ct. 1175 (2010). The objective component of an excessive force claim is not nearly as demanding, however, because "'[w]hen prison officials maliciously and sadistically use force to cause harm'. . . 'contemporary standards of decency are always violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or

---

[1] The undersigned notes that according to the facts of a prior case by Plaintiff, he also smeared feces on the walls of his cell on June 15, 2009. *See Wambach v. Powers, et al.*, C/A 1:09-1784-HFF-SVH. The court may take judicial notice of Plaintiff's prior proceeding. *See Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the content of court records.'"). The undersigned notes that according to the medical records submitted by Defendants, Plaintiff had initiated Seroquel at the time.

9

inhuman, inflicting less than some arbitrary quantity of injury.'" *Wilkins*, 130 S.Ct. at 1178 (quoting *Hudson v. McMillan*, 503 U.S. 1, 7 (1992)).

However, courts must give "wide-ranging deference" to the execution of policies and practices that in the judgment of the prison officials are necessary "to preserve internal order and discipline and to maintain institutional security." *Whitley,* 475 U.S. at 321–22. The Supreme Court has recognized that prison officials work in an environment where there is an ever-present potential for violence and unrest, and that courts should not substitute their judgment for that of the officials who must make a choice at the moment when the application of force is needed. *Id.* The deference owed to prison administrators extends to "prophylactic or preventive measures intended to reduce the incidence of . . . breaches of prison discipline." *Id.* at 322.

Federal courts closely scrutinize the use of tear gas or mace in correctional facilities. *See, e.g., Bailey v. Turner*, 736 F.2d 963 (4th Cir. 1984); *Greear v. Loving*, 538 F.2d 578 (4th Cir. 1976). This is because, even when properly used, such weapons "possess inherently dangerous characteristics capable of causing serious and perhaps irreparable injury to the victim." *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984), *cert. denied*, 470 U.S. 1035 (1985). Accordingly, although it is not per se unconstitutional for guards to spray mace at prisoners confined in their cells, it is necessary to examine the "totality of the circumstances, including the provocation, the amount of gas used, and the purposes for which the gas is used [to] determin[e] the validity of the use of tear gas in

the prison environment." *Bailey*, 736 F.2d at 969; *see also, Justice v. Dennis*, 834 F.2d 380, 383 (4th Cir. 1987) (en banc), *vacated on other grounds*, 490 U.S. 1087 (1989).

However, mace can be constitutionally used in small quantities to control a "recalcitrant inmate." *Bailey*, 736 F.2d at 968–69. A limited application of mace may be "much more humane and effective than a flesh to flesh confrontation with an inmate." *Soto v. Dickey*, 744 F2d 1260, 1270 (7th Cir. 1984). Moreover, prompt washing of the maced area of the body will usually provide immediate relief from pain. *Id.* Furthermore, because a limited use of mace constitutes a relatively "mild" response compared to other forms of force, the initial application of mace indicates a "tempered" response by the prison officials. *Williams v. Benjamin*, 77 F3d 756, 763 (4th Cir. 1996).

The Supreme Court has directed that several factors should be balanced in determining whether prison officials acted maliciously and sadistically. These factors include (1) the necessity for the application of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the injury actually inflicted; (4) the extent of the threat to the safety of the staff and prisoners, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) the efforts taken by the officials, if any, to temper the severity of the force applied. *Whitley*, 475 U.S. at 321.

Here, Murray's decision to use some force was justified, as Plaintiff admits that he repeatedly refused to follow Murray's directives to clean the cell. It appears that the need for force and the amount of force used was not unreasonable because Defendants claim,

11

and Plaintiff has not disputed, that only a small amount of mace was used. Beyond his own allegations, Plaintiff has provided no evidence, in the form of medical records or otherwise, that he was injured by the exposure to pepper spray. Additionally, Murray was reasonable in perceiving a threat from Plaintiff, who admits that he disobeyed Murray's direct orders. Although Plaintiff was confined in his cell, inmates cannot be allowed to be disruptive and violate direct orders of the correctional officers. Finally, Murray took no further disciplinary action, and Plaintiff was allowed to decontaminate in the shower and was transferred to Spartanburg Regional Medical Center for Evaluation. [Entry #31-3]. Therefore, after balancing the *Whitley* factors, and based on particular facts of this case, the undersigned submits that Plaintiff has failed to establish a claim for excessive force and Defendants are entitled to summary judgment based on Plaintiff's excessive force claim.

III.    Conclusion

For the foregoing reasons, it is recommended that Defendants' motion for summary judgment be granted with regard to Plaintiff's claim against Murray for excessive force and denies as to Plaintiff's claim against Blackwell for alleged deliberate indifference to his serious medical needs.

IT IS SO RECOMMENDED.

July 21, 2011                                              Shiva V. Hodges
Florence, South Carolina                         United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

13